UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT TACOMA

FRANK J. FULLER,

        Plaintiff,

v.

COUNTY OF KITSAP, et al.,

        Defendants.

CASE NO. C16-5407 BHS

ORDER DENYING DEFENDANTS' MOTION FOR SUMMARY JUDGMENT AND RESERVING RULING ON PLAINTIFF'S MOTION FOR SANCTIONS

This matter comes before the Court on the motion for summary judgment by Defendants Kitsap County, Deputy Matthew Hill ("Deputy Hill"), and Jane Doe Hill. Dkt. 73. Also before the Court is Plaintiff Frank J. Fuller's ("Plaintiff") motion for sanctions. Dkt. 75. The Court has considered the pleadings filed in support of and in opposition to the motions and the remainder of the file and, for the reasons stated herein, hereby (1) denies the motion for summary judgment and (2) reserves ruling on the motion for sanctions.

## I.    PROCEDURAL HISTORY

On May 26, 2016, Plaintiff filed his complaint. Dkt. 1. Plaintiff brings claims for excessive force, assault, and battery arising from an arrest performed by Mr. Hill in his capacity as a Kitsap County Deputy Sherriff. Dkt. 1 at 4–7.

On September 28, 2016, the Court issued its Rule 16 scheduling order. Dkt. 20. The order established a discovery cutoff of July 17, 2017. *Id.* The order also established August 16, 2017, as a deadline for dispositive motions. *Id.*

On October 30, 2017, the Court granted a motion by Defendants to exclude the testimony of Plaintiff's disclosed expert witness. Dkt. 70. On November 8, 2017, the parties appeared for their pretrial conference. Dkt. 72. At the hearing, Defendants requested leave to file a motion for summary judgment, suggesting that the motion was now warranted due to the Court's earlier decision to strike the testimony of Plaintiff's expert witness. The Court granted the request and stated that it would entertain such a motion.

On November 9, 2017, Defendants moved for summary judgment, arguing that (1) Deputy Hill used reasonable force while arresting Plaintiff and (2) Deputy Hill is entitled to qualified immunity on Plaintiff's § 1983 claim for excessive force. Dkt. 73. On November 14, 2017, Plaintiff responded. Dkt. 77.

Also on November 9, 2017, Plaintiff moved for sanctions pursuant to Rule 37(c) seeking the exclusion of any testimony from Cristal McCune that Defendants may seek to admit. Dkt. 75. On November 16, 2017, Defendants responded. Dkt. 80.

## II.   FACTUAL BACKGROUND

At 4:00 am on May 27, 2014, in Port Orchard, Washington, State Trooper Chad Prentice observed a vehicle that he considered to be suspiciously parked. Dkt. 74 at 6. As Trooper Prentice turned his patrol car in behind the vehicle, the driver of the suspect vehicle, Mark Pratt, immediately placed the vehicle in gear and left the parking lot. *Id.*

After Trooper Prentice checked the vehicle's license plate and discovered that the tabs were expired, he activated his overhead lights. *Id.*

An approximately seven-minute pursuit ensued wherein Pratt ran a red light (after coming to a momentary halt) and reached speeds of approximately seventy miles per hour in a forty-five miles-per-hour zone. *Id.* The pursuit ended at a residence where the driver of the suspect vehicle abandoned the vehicle in the driveway, with the engine running and in gear, and ran into the house. *Id.* By the end of the car chase, Pratt was also being pursued by Deputy Hill. *Id.* Deputy Hill chased Pratt into the house. *Id.* Trooper Prentice also followed Pratt and Deputy Hill into the house. *Id.*

Inside the house, Deputy Hill entered Plaintiff's bedroom, through which Pratt had fled to exit the house. Dkt. 74 at 29. Entering the room with his flashlight and firearm drawn, Deputy Hill encountered Plaintiff, just inside the doorway, and observed a female standing on top of the bed. *Id.* at 29, 31. Plaintiff was fully clothed, but he was dressed entirely differently from Pratt and was not wearing shoes. *See* Dkt. 78-5. Deputy Hill pointed his firearm at Plaintiff and instructed Plaintiff to show him his hands. Dkt. 74 at 32. *See also* Dkt. 78-5 (audio confirmation of statement "show me your hands"). Plaintiff complied with Deputy Hill's instruction and raised his hands. Dkt. 74 at 23. Deputy Hill also instructed Plaintiff to get on the ground. *Id.* at 23–24. *See also* Dkt. 78-5.

The parties dispute what occurred next. Deputy Hill has stated that Plaintiff failed to comply with his orders to get on the ground. Dkt. 74 at 34–35. In his deposition, Deputy Hill explained that he then holstered his firearm and "put his hands on [Plaintiff] to try and assist him to the ground." *Id.* at 34. Deputy Hill further stated that he grabbed

Plaintiff and that he did not strike Plaintiff with the flashlight, but could not otherwise recall the details of how he put Plaintiff on the ground. *Id.* at 35.

Contradicting Deputy Hill's account, Plaintiff has stated that he was already going to the ground in compliance with Deputy Hill's instructions when he was struck in the head, experienced a bright flash, and was briefly knocked unconscious. *Id.* at 46–47, 51. *But see* Dkt. 78-6 at 2. Plaintiff recalls regaining consciousness when he was already lying face down on the floor with Deputy Hill on top of him. Dkt. 74 at 46–48. Nowhere in the record does Plaintiff definitively recall being struck with the flashlight before losing consciousness. However, Plaintiff has been knocked unconscious before and suffered the same "flash of light" experience on the previous occasions. *Id.* at 47. Also, because Deputy Hill has acknowledged that he holstered his firearm before attempting to force Plaintiff to the ground, Plaintiff argues that this creates a logical and reasonable inference that Deputy Hill struck him in the head with his flashlight. Plaintiff suffered injuries that might corroborate being struck in the head or face, including a dislocated jaw, a broken tooth, and abrasions on his head. *See id.* at 51; Dkt. 78-5; Dkt. 78-6 at 2.

While Deputy Hill denies striking Plaintiff before bringing him to the ground, he has acknowledged that he repeatedly struck Plaintiff with his flashlight after Plaintiff was lying face down. Dkt. 74 at 41. Deputy Hill has stated that he did so in order to restrain Plaintiff's hands with handcuffs. *Id.* at 48–50. Specifically, Deputy Hill was attempting to force Plaintiff to bring one of his arms out from underneath his torso or waist and to place it behind his back. Dkt. 74 at 36–37. Plaintiff states that he was unable to bring his arm out because it was pinned beneath him by the weight of Deputy Hill kneeling on top of

him. *Id.* In the poorly captured audio recording of the event, it sounds as though Plaintiff loudly cries out "I can't" while Deputy Hill is instructing him to put his arm behind his back. *See* Dkt. 78-5 at 10:16–10:24. Trooper Prentice was also present and was assisting Deputy Hill in trying to restrain Plaintiff. *Id.* at 15–16. Trooper Prentice has stated that he had placed his foot on Plaintiff's shoulder in order to prevent Plaintiff from removing his arm from underneath his waist out of concern that Plaintiff was reaching for a weapon. *Id.* at 17. Plaintiff's hand was eventually removed from beneath his body once his shoulder was dislocated. *Id.* at 50.

## III. DISCUSSION

### A. Summary Judgment

Defendants move for summary judgment on all of Plaintiff's claims. In doing so, Defendants first argue that Deputy Hill used reasonable force while arresting Plaintiff and that as a result, all of his claims must fail. Dkt. 73 at 7–12. Alternatively, Defendants argue that Deputy Hill is entitled to qualified immunity on the basis that his conduct was not clearly unlawful. *Id.* at 12–15.

#### 1. Standard

Summary judgment is proper only if the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c). The moving party is entitled to judgment as a matter of law when the nonmoving party fails to make a sufficient showing on an essential element of a claim in the case on which the nonmoving party has the burden of proof. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323

(1986). There is no genuine issue of fact for trial where the record, taken as a whole, could not lead a rational trier of fact to find for the nonmoving party. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986) (nonmoving party must present specific, significant probative evidence, not simply "some metaphysical doubt"). *See also* Fed. R. Civ. P. 56(e). Conversely, a genuine dispute over a material fact exists if there is sufficient evidence supporting the claimed factual dispute, requiring a judge or jury to resolve the differing versions of the truth. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 253 (1986); *T.W. Elec. Serv., Inc. v. Pac. Elec. Contractors Ass'n*, 809 F.2d 626, 630 (9th Cir. 1987).

The determination of the existence of a material fact is often a close question. The Court must consider the substantive evidentiary burden that the nonmoving party must meet at trial—e.g., a preponderance of the evidence in most civil cases. *Anderson*, 477 U.S. at 254; *T.W. Elec. Serv., Inc.*, 809 F.2d at 630. The Court must resolve any factual issues of controversy in favor of the nonmoving party only when the facts specifically attested by that party contradict facts specifically attested by the moving party. The nonmoving party may not merely state that it will discredit the moving party's evidence at trial, in the hopes that evidence can be developed at trial to support the claim. *T.W. Elec. Serv., Inc.*, 809 F.2d at 630 (relying on *Anderson*, 477 U.S. at 255). Conclusory, nonspecific statements in affidavits are not sufficient, and missing facts will not be presumed. *Lujan v. Nat'l Wildlife Fed'n*, 497 U.S. 871, 888–89 (1990).

### 2. Excessive Force Analysis

First, the Court addresses Defendants' argument that, as a matter of law, Deputy Hill used reasonable force while arresting Plaintiff. *See* Dkt. 73 at 7–12. "A claim of excessive force in the course of making a seizure of the person is properly analyzed under the Fourth Amendment's objective reasonableness standard." *Scott v. Harris*, 550 U.S. 372, 381 (2007) (quoting *Graham v. Connor*, 490 U.S. 386, 109 (1989)) (internal quotation marks omitted).

"In determining the reasonableness of the manner in which a seizure is effected, we must balance the nature and quality of the intrusion on the individual's Fourth Amendment interests against the importance of the governmental interests alleged to justify the intrusion." *Id.* at 383 (quoting *United States v. Place*, 462 U.S. 696, 703 (1983)) (internal quotation marks omitted). The Ninth Circuit provides three steps for this balancing test. *Glenn v. Washington County*, 673 F.3d 864, 871 (9th Cir. 2011). First, the Court "must assess the severity of the intrusion on the individual's Fourth Amendment rights by evaluating the type and amount of force inflicted." *Id.* Second, the Court must evaluate the government's interest in the use of force. *Id.* In the third and final step, the Court must "balance the gravity of the intrusion on the individual against the government's need for that intrusion." *Id.* Notably, even if "some force is justified, the amount actually used may be excessive." *Id.* Therefore, because the excessive force inquiry "nearly always requires a jury to sift through disputed factual contentions, and to draw inferences therefrom, [the Ninth Circuit] has held on many occasions that summary

judgment or judgment as a matter of law in excessive force cases should be granted sparingly." *Id.* (citations omitted).

Interpreting the facts in the light most favorable to Plaintiff, Deputy Hill's use of force was not reasonable as a matter of law. It is undisputed that Deputy Hill would have a substantial interest in apprehending Plaintiff after he mistook Plaintiff for Pratt, who led police on a chase and abandoned his running vehicle in order to run into the residence. It is also undisputed that the intrusion on Plaintiff's rights was severe, as Deputy Hill employed "intermediate force" and considerably harmed Plaintiff by repeatedly striking him with a flashlight. *See Young v. Cty. of Los Angeles*, 655 F.3d 1156, 1162 (9th Cir. 2011) ("A police officer's use of baton blows . . . presents a significant use of force that is capable of causing pain and bodily injury, and therefore, baton blows, like pepper spray, are considered a form of 'intermediate force.'"). However, there are still too many genuine disputes of fact for the Court to determine as a matter of law that Deputy Hill's use of force and the intrusion on Plaintiff's rights was reasonably proportionate to Deputy Hill's interest in detaining Plaintiff.

A jury could very well conclude that Plaintiff refused to get on the ground and that Deputy Hill forced Plaintiff's compliance without striking him. A jury could also conclude that Plaintiff was actively resisting arrest while lying on the floor and, under such a finding, Deputy Hill would have acted reasonably in repeatedly striking Plaintiff with his flashlight while struggling to handcuff him. However, there are genuine disputes of fact as to (1) whether Deputy Hill reasonably could have believed that Plaintiff was refusing to get on the ground, (2) whether Deputy Hill struck Plaintiff in the head with

his flashlight while bringing Plaintiff to the ground, and (3) whether Plaintiff was actively resisting arrest while lying down. Not in dispute is the fact that Plaintiff had already raised his hands, showing that Plaintiff had begun to submit willingly to Deputy Hill's orders before the application of any force. Accordingly, interpreting the facts and drawing all reasonable inferences in the light most favorable to Plaintiff, the record indicates that Plaintiff was struck in the head with a flashlight and knocked unconscious, despite raising his hands and complying with Deputy Hill's instructions, after which Deputy Hill proceeded to strike Plaintiff repeatedly as Plaintiff was lying on the ground with his hand pinned underneath him.

Moreover, the fact that Pratt was clearly observable as he ran into the house and Plaintiff was dressed significantly different from Pratt creates questions as to the reasonableness of Deputy Hill mistaking Plaintiff for the fleeing suspect. Understandably, Officers must make split-second decisions with life or death consequences, and the Court should not be in the business of second-guessing those decisions. *See Plumhoff v. Rickard*, 134 S. Ct. 2012, 2020 (2014) (Courts must "allo[w] for the fact that police officers are often forced to make split-second judgments—in circumstances that are tense, uncertain, and rapidly evolving—about the amount of force that is necessary in a particular situation.") (quotation omitted). Nonetheless, the more easily distinguishable Plaintiff's appearance was from the appearance of Pratt, the less convincing it becomes that Deputy Hill acted reasonably in mistaking Plaintiff for Pratt and employing intermediate force to subdue him.

If Plaintiff was not resisting arrest, refusing commands, or otherwise posing a threat when Deputy Hill began to strike him with a flashlight, it could be concluded that this use of force was excessive when balanced against the government's interest in detaining him. This precludes the Court from finding as a matter of law that Deputy Hill employed reasonable force and that Defendants are entitled to summary judgment on Plaintiff's § 1983 and state law claims for excessive force, assault, and battery.

### 3. Qualified Immunity

Next, the Court addresses Defendants' argument that Deputy Hill is entitled to qualified immunity. *See* Dkt. 73 at 12–15. Under federal law, the qualified immunity doctrine shields government officials who perform discretionary functions "from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982). This qualified immunity is reviewed under a two-part test where the court determines whether Plaintiff's allegations "make out a violation of a constitutional right," and if so, whether the "right at issue was 'clearly established' at the time of defendant's alleged misconduct." *Pearson v. Callahan*, 555 U.S. 223, 232 (2009) (citing *Saucier v. Katz*, 533 U.S. 194, 200–01 (2001)).

Qualified immunity applies when officials "act in ways they reasonably believe to be lawful." *Garcia v. County of Merced*, 639 F.3d 1206, 1208 (9th Cir. 2011) (quoting *Anderson v. Creighton*, 483 U.S. 635, 641 (1987)). The reasonableness inquiry is objective, evaluating whether an official's actions are "objectively reasonable" in light of the facts and circumstances before them, without regard to their underlying intent or

motivation. *See Graham v. Connor*, 490 U.S. 386, 397 (1989)). Even if an official's decision is constitutionally deficient, qualified immunity shields her from suit if her misapprehension about the law applicable to the circumstances was reasonable. *See Brosseau v. Haugen*, 543 U.S. 194, 198 (2004). As a privilege from suit, not merely from liability, the "qualified immunity standard gives ample room for mistaken judgments by protecting all but the plainly incompetent or those who knowingly violate the law." *Liberal v. Estrada*, 632 F.3d 1064, 1077 (9th Cir. 2011) (quoting *Rodis v. City of San Francisco*, 558 F.3d 964, 970–71 (9th Cir. 2009), *cert. denied*, 558 U.S. 1110 (2010)); *Hunter v. Bryant*, 502 U.S. 224, 229 (1991) (citing *Malley v. Briggs*, 475 U.S. 335 (1986)).

In the context of excessive force claims, the Ninth Circuit has "recognized that a failure to fully or immediately comply with an officer's orders neither rises to the level of active resistance nor justifies the application of a non-trivial amount of force." *Nelson v. City of Davis*, 685 F.3d 867, 881 (9th Cir. 2012). Under this clearly established precedent, the Court is precluded from granting qualified immunity at this stage because, construing the factual disputes described above in Plaintiff's favor, Deputy Hill employed "intermediate force" against Plaintiff even though he was complying with Deputy Hill's commands. Even if it is established that Plaintiff initially refused to lay on the ground, Deputy Hill might still be liable under this precedent if he struck Plaintiff with his flashlight absent any indication of active resistance.

Finally, the Court notes that Defendants have only moved for qualified immunity on Plaintiff's § 1983 claim. In Washington, "[s]tate law qualified immunity rests on a

different analysis than does qualified immunity under section 1983." *McKinney v. City of Tukwila*, 103 Wn. App. 391, 407, 13 P.3d 631 (2000) (citing *Staats v. Brown*, 139 Wn.2d 757, 779 (2000)). In this sense, Washington State law appears to hold law enforcement to a higher standard of liability than the Constitution requires. Under Washington law, "[a]n officer has *state law* qualified immunity from suit for false arrest where the officer (1) carries out a statutory duty, (2) according to procedures dictated to him by statute and superiors, and (3) acts reasonably." *McKinney v. City of Tukwila*, 103 Wash. App. 391, 407 (2000) (citing *Staats*, 139 Wn.2d at 778; *Guffey v. State*, 103 Wash.2d 144, 152 (1984)) (emphasis added). To overcome qualified immunity in a claim of assault and battery, a plaintiff need only show that the force used in an arrest was excessive. *Thomas v. City of Seattle*, 395 F. Supp. 2d 992, 1000 (W.D. Wash. 2005) (citing *Staats*, 139 Wn.2d at 779–80) ("State qualified immunity for assault and battery is not available to an officer who uses excessive force"). Accordingly, after key factual disputes have been resolved by a jury, even if it is ultimately established that federal qualified immunity protects Deputy Hill from liability under § 1983 based on a lack of clearly established precedent, Defendants may nonetheless be liable under Plaintiff's state law causes of action if a jury determines that the force was excessive.

**B.      Rule 37(c) Sanctions**

Finally, the Court addresses Plaintiff's motion for sanctions pursuant to Rule 37(c). Specifically, Plaintiff moves for sanctions and the exclusion of any testimony from Cristal McCune on the basis that Defendants wrongfully withheld the identity and contact

information of Ms. McCune, instead choosing to list her under her previous name of Crystal Pratt and providing old contact information in their initial disclosures. Dkt. 75.

To support this motion, Plaintiff first points to propounded discovery requests that would have led Defendants to identify Ms. McCune under her present name and information had they been answered appropriately. *See* Dkt. 75 at 3–5. Instead of providing Ms. McCune's information in the discovery requests, Defendants responded with a general objection which Plaintiff argues was improper. However, the Court need not decide whether Defendant's objections were impermissible, as Plaintiff is barred from moving for sanctions or exclusion on this basis. The time for filing a motion regarding Defendants' inadequate discovery responses has long passed and Plaintiff has not shown good cause for his delay in challenging the Defendants' claims of privilege. Dkt. 20. *See also* Fed. R. Civ. P. 16(b).

Nonetheless, Plaintiff has also argued that Defendants were under an obligation to supplement their initial disclosures with correct information regarding the name and contact information for Ms. McCune. Dkt. 75 at 7–8. Indeed, Rule 26(a)(1) requires that parties provide in initial disclosures "the name and, if known, the address and telephone number of each individual likely to have discoverable information—along with the subjects of that information—that the disclosing party may use to support its claims or defenses, unless the use would be solely for impeachment." Fed. R. Civ. P. 26(a)(1). In turn, Rule 26(e)(1) mandates that parties supplement or correct their initial disclosures "in a timely manner if the party learns that in some material respect the disclosure or response is incomplete or incorrect, and if the additional or corrective information has not

otherwise been made known to the other parties during the discovery process or in writing." Fed. R. Civ. P. 26. Accordingly, Defendants were required to supplement their initial disclosures regarding Ms. McCune's contact information and the subject of her testimony if they thought that they may use her as a witness in their defense. However, despite employing an investigator to obtain her updated contact information, conducting an interview, and deciding to use her as a witness regarding the credibility of Plaintiff and his alleged drug use at the time of his arrest, Defendants failed to update their disclosures with her new name or viable contact information. Instead, this information was only just recently disclosed in their pretrial statements.

When a failure to disclose under Rule 26(e)(1) has been established, the party facing Rule 37(c) sanctions bears the burden of proving that its failure to disclose the required information was substantially justified or is harmless. *R & R Sails, Inc. v. Ins. Co. of Pennsylvania*, 673 F.3d 1240, 1246 (9th Cir. 2012). If this burden is not satisfied, "Rule 37(c)(1) forbid[s] the use at trial of any information required to be disclosed by Rule 26(a) that is not properly disclosed." *Id.* (quotation omitted). In their response, Defendants' only excuse for their failure to disclose Ms. McCune's updated contact information or new name is that the content of their interview with her is privileged. While this may be the case, the name and contact information of a witness that they intended to testify at trial was not privileged, but rather, the disclosure was required. Additionally, while the exact content of the interview and Defendants' notes are privileged, Defendants were still required to disclose the general subject of Ms. McCune's testimony that they intend to offer in support of their defense.

At this point, Defendants have failed to establish a legitimate basis for their failure to timely supplement their initial disclosures with the updated contact information of Ms. McCune and the subject of her testimony. Nonetheless, the Court is not certain that Defendants' failure to supplement cannot be cured as to render the failure harmless. Accordingly, the Court will reserve ruling on whether the testimony of Ms. McCune should be excluded or whether some other remedy is more appropriate. The Court will render its decision after hearing oral argument on the first day of trial: November 27, 2017.

Also, the Court notes that in addition to exclusion under Rule 37(c), it is within the Court's discretion to "order payment of the reasonable expenses, including attorney's fees, caused by the failure" to disclose or supplement. Fed. R. Civ. P. 37(c)(1)(A). It is likely that any costs associated with curing Defendant's failure to supplement will be borne entirely by Defendants, if any such cure is available.

### IV. ORDER

Therefore, it is hereby **ORDERED** that Defendants' motion for summary judgment (Dkt. 73) is **DENIED**. The Court **RESERVES RULING** on Plaintiff's motion for sanctions (Dkt. 75).

Dated this 21st day of November, 2017.

BENJAMIN H. SETTLE
United States District Judge